IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN GOLIA,<br><br>           Plaintiff,<br><br>     v.<br><br>IBCS GROUP, INC., *d/b/a* IBCS<br>GROUP, IBCS FIDELITY, INC.,<br>EDWARD SCARBOROUGH, and YVONNE<br>SCARBOROUGH,<br><br>           Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>     Civil Action<br>No. 14-2577 (JBS/KMW)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, Chief Judge:**

In this action for the recovery of unpaid compensation,
benefits, and commissions, Plaintiff Steven Golia (hereinafter,
"Plaintiff") moves for default judgment under Rule 55(b)(2),
Fed. R. Civ. P., against Defendants IBCS Group, Inc.
(hereinafter, "IBCS") and IBCS Fidelity, Inc. (hereinafter,
"Fidelity") for failure to answer or otherwise respond to
Plaintiff's Complaint. [Docket Item 17.] For the reasons that
follow, Plaintiff's motion will be granted in part with respect
to IBCS and denied with respect to Fidelity, and the Court will
enter a default judgment in favor of Plaintiff and against IBCS
in the amount of $130,655.29. The Court finds as follow:

1.    In his Complaint, Plaintiff alleges that IBCS, a
surety business, hired him as a "sales representative" on

February 4, 2008.[1]  (Compl. at ¶ 12.)  Plaintiff's Employment
Agreement with IBCS provided, in relevant part, for a base
annual salary of $85,000, a performance payment of 10% "of all
company gross income related to surety business or guarantee
business," and "lease cost reimbursement for a Mercedes-Benz
S550 4MATIC sedan, or equivalent vehicle."  (Ex. A to Compl.)
Following three years of service, IBCS and Plaintiff modified
the employment agreement on March 3, 2011.  (Id.)  In the
modification, IBCS increased Plaintiff's base annual salary to
$125,000, altered his performance payment structure, and agreed
to pay Plaintiff's "unpaid 2009 bonus in the amount of $62,500"
by the end of the following month, April 2011.  (Id.)

    2.   On February 7, 2012, however, Plaintiff alleges that
IBCS "unilaterally decided to terminate" Plaintiff's employment
as a sales representative, opting instead to retain him as an
independent contractor.  (Compl. at ¶ 14; see also Ex. B to
Compl.)  At that time, $34,200 of the $62,500 bonus for 2009

---

[1] Defendants Edward and Yvonne Scarborough (hereinafter, the
"Scarboroughs") served as directors and officers of IBCS and
Fidelity.  (See Compl. at ¶¶ 6-7.)  Following the Scaboroughs'
failure to plead or otherwise respond to Plaintiff's Complaint,
the Court entered default against them on July 14, 2014.
[Docket Items 11 & 12.]  On July 17, 2014, however, the
Scarboroughs filed a joint petition for relief under Chapter 11
of the United States Bankruptcy Code in the United States
Bankruptcy Court for the Middle District of Florida.  [Docket
Item 13.]  As a result, the Court stayed and administratively
terminated this action without prejudice as to them on August
20, 2014.  [Docket Item 16.]

remained outstanding, as did to $19,029.78 in "reimbursement" for Plaintiff's leased vehicle.  (Compl. at ¶¶ 15-16.)  Despite the termination, IBCS and Plaintiff entered into negotiations regarding his retention as an "agent" or "independent contractor" (id. at ¶¶ 20-21), and ultimately finalized the terms of Plaintiff's employment as a commissions-only agent by email correspondence on February 10, 2012 (hereinafter, the "Commission Agreement").  (Compl. at ¶¶ 20-21; see also Ex. B to Compl.)  The Commission Agreement set forth a schedule of tiered commissions based upon Plaintiff's sale of final bonds, financial guarantees, and contract overruns, and required IBCS to make all commission payments within a specified period. (Compl. at ¶ 22; see also Ex. B to Compl.)  From February to October 2013, Plaintiff completed ten "qualifying transactions" in the total amount of $17,626,249.65.  (Compl. at ¶¶ 25-26; see also Exs. C & D to Compl.)  Nevertheless, IBCS terminated the Commission Agreement on December 19, 2014, without first making all of the payments required by the Commission Agreement, nor compensating Plaintiff for the outstanding sums due under the Employment Agreement.  (Compl. at ¶¶ 26-27.)  Indeed, Plaintiff alleges that IBCS owes him $53,229.78 under the terms of the Employment Agreement, as modified, and $111,089.84 in unpaid

commissions pursuant to the Commission Agreement.[2] (See Compl.
at ¶ 31.)

    3.   As a result of IBCS's continued failure to comply with
the compensation terms of the Employment and Commission
Agreements, Plaintiff filed the initial Complaint in this action
on April 23, 2014, alleging, in relevant part, that IBCS and
Fidelity breached the terms of the Employment and Commission
Agreements, and relatedly, violated New Jersey's Wage Payment
Law, N.J.S.A. §§ 31:11-4.1, et seq. (hereinafter, "New Jersey's
Wage Law"), and Sales Representatives' Rights Act, N.J.S.A. §§
2A:61A-1, et seq. (hereinafter, "New Jersey's Commission Payment
Statute"). (See Compl. at ¶¶ 32-44, 51-62.)

    4.   On May 6, 2014, Plaintiff successfully effectuated
personal service of the Complaint upon IBCS and Fidelity at
their principal place of business in Charlottesville, Virginia.
[Docket Items 3 & 4.] Following the failure of IBCS and

---

[2] Plaintiff alleges that he accrued $111,089.84 in commissions
under the tiered payment structure of the Commission Agreement.
(See Compl. at ¶ 29.) From February 8, 2013 to October 17,
2013, Plaintiff received $34,274.33 in payments from IBCS. (See
id. at ¶ 30; see also Ex. D to Compl.) As stated below,
however, it remains unclear whether IBCS made these payments in
consideration of all sums owed to Plaintiff, or only as partial
payment towards Plaintiff's accrued commissions, and Plaintiff's
submissions inconsistently identify the basis for the payments.
(Compare Pl.'s Br. at 1-4 (appearing to argue that the payments
qualified as compensation for all outstanding sums), with Frank
Aff. at ¶ 10 (suggesting that the payments occurred only in
consideration of unpaid wages and benefits, but not
commissions).)

Fidelity to answer or otherwise respond, the Clerk of Court entered default against all defendants [Docket Items 9 & 10], and Plaintiff's motion for default judgment followed. [Docket Item 17.]

5.   In the pending motion, Plaintiff argues that the unchallenged facts demonstrate his entitlement to unpaid compensation and benefits in the aggregate amount of $53,229.78 for breach of the Employment Agreement and/or for violating New Jersey's Wage Law, N.J.S.A. § 34:11-4.3.  (See Pl.'s Br. at 11-16.)  Plaintiff similarly argues that the undisputed facts reflect his entitlement "to payment of $111,089.00" in outstanding commissions, in addition to "$333,267.00 in exemplary damages," attorney's fees, and costs pursuant to New Jersey's Commission Payment Statute, N.J.S.A. § 2A:61A-3.  (See id. at 11-14, 16-17; see also Frank Aff. at ¶¶ 9-10.)

6.   Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading.  See Fed. R. Civ. P. 55(b)(2); see also Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  Nevertheless, the decision of whether to enter a default judgment rests within the sound "discretion of the district court," Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d

Cir. 1984), and the Court of Appeals for the Third Circuit has "repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable." Id. at 1181.

7.    As a result, prior to entering a judgment of default, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co., No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted).  In so considering, a court must accept as true every "well-pled" factual allegation of the complaint. Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).  A court need not, however, accept the plaintiff's legal conclusions, nor the plaintiff's assertions concerning damages. See id.; see also Doe v. Simone, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) (citations omitted).

8.    As to the first inquiry, the Court must consider whether it possesses personal jurisdiction over IBCS and Fidelity, both foreign corporations.[3]  Because the record fails

---

[3] As stated above, the Court finds, based upon Plaintiff's certificate of service, that Plaintiff has provided sufficient proof that Plaintiff personally served IBCS's and Fidelity's

to disclose any basis to exercise general jurisdiction over IBCS and Fidelity,[4] the Court must consider whether IBCS and/or Fidelity have "'purposefully directed'" relevant activities at this forum for purposes of specific jurisdiction.  Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).  In a contract case, such as this one, in order to exercise specific jurisdiction over IBCS and/or Fidelity, the facts of the Complaint must specifically demonstrate that contacts of IBCS and/or Fidelity with this forum proved "instrumental in either the formation or the breach of the contract." Control Screening LLC v. Tech. Application and Production Co. (Tecapro), HCMC-Vietnam, 687 F.3d 163, 167 (3d Cir. 2012).  Here, because IBCS and Plaintiff negotiated both Agreements while Plaintiff remained in this forum, and because this litigation arises from Plaintiff's in-forum performance under the Agreements, the undisputed facts readily support the exercise of specific jurisdiction over IBCS.  (See Exs. A & B to Compl. (identifying Plaintiff's New Jersey address).)

---

agents at their principal place of business in Charlottes, Virginia.  [See, e.g., Docket Items 3 & 4.]
[4] The Complaint identifies IBCS and Fidelity as corporations organized under the laws of the Florida, with principal places of business at 944 Glenwood Station Lane, Suite 104, Charlottesville, Virginia 22901.  (Compl. at ¶¶ 2-3.)

9.   The Court, however, finds the unchallenged facts, even accepted as true, insufficient to provide a basis to exercise specific jurisdiction over Fidelity.  Critically, the Agreements contain no reference to Fidelity (see, e.g., Exs. A & B to Compl.), and Plaintiff concedes that the Agreements only imposed contractual obligations by and between Plaintiff and IBCS.[5] (See, e.g., Compl. at ¶ 31 (noting that Plaintiff seeks damages as "a result of IBCS's multiple breaches of the Employment Agreement and Commission Agreement"); see also Pl.'s Br. at 1-3 (arguing that IBCS "has failed and continues to fail to make the require payments" pursuant to the Employment and Commission Agreements).)  Indeed, despite asserting claims against Fidelity, Plaintiff's Complaint makes only one fleeting reference to Fidelity, by alleging that, at some point "during the course of the business relationship between [Plaintiff] and IBCS, IBCS transferred its surety business operations to Fidelity," which "operated as an alter ego of IBCS."  (Compl. at ¶¶ 4-5.)  Nevertheless, Plaintiff has alleged no facts to

---

[5] For that reason, Plaintiff's Complaint also fails to sufficiently state a cause of action for breach of contract against Fidelity, because the Court finds no record evidence to support the running of any contractual obligation to Fidelity. As a result, the paradigmatic bases for the exercise of general jurisdiction are not present in this action.  See Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014) (explaining that a defendant's "place of incorporation and principal place of business" constitute the paradigm, and seemingly exclusive, bases for finding a corporate defendant subject to general jurisdiction).

suggest that Fidelity has any claims-based contacts with this forum, nor has Plaintiff addressed the relevant standard for imputing the jurisdictional contacts of one entity to its alleged alter ego.  See, e.g., Westfield Ins. Co. v. Interline Brands, Inc., No. 12-6775, 2013 WL 6816173, at *21 (D.N.J. Dec. 20, 2013) (discussing the necessary showing for personal jurisdiction based upon an alter ego theory).  Plaintiff's motion for default judgment will therefore be denied with respect to Fidelity.[6]

10.  With respect to the second inquiry, the Court must consider whether the undisputed facts of Plaintiff's Complaint allege legitimate claims for breach of contract against IBCS. The Court, however, need not belabor this inquiry, because the unchallenged facts of Plaintiff's Complaint easily state a sufficient claim for breach of contract against IBCS.  In order to succeed on a breach of contract claim under New Jersey law, a plaintiff must show that (1) a valid contract existed, (2) that the defendant failed to perform under the contract, and (3) that failure to perform caused injury to plaintiff.  See Gutwirth v.

_____

[6] Several of the bond invoices submitted by Plaintiff reflect that he negotiated bond sales in the name of Fidelity.  (See, e.g., Ex. C to Pl.'s Br.)  Nevertheless, the Court cannot ignore that neither the Employment nor Commission Agreements reference Fidelity, nor do the facts at issue in this litigation appear to arise, even in part, from Fidelity's contacts with this forum. Therefore, based upon the present record, the Court finds no basis to exercise specific jurisdiction over Fidelity.

Woodford Cedar Run Wildlife Refuge, 38 F. Supp. 3d 485, 491
(D.N.J. 2014) (citing Red Roof Franchising, LLC v. Patel, 877 F.
Supp. 2d 124, 131 (D.N.J. 2012)).  The elements of a valid
contract consist of "mutual assent, consideration, legality of
the object of the contract, capacity of the parties, and
formulation of memorialization." Id. (citing D'Agostino v.
Appliances Buy Phone, Inc., No. 10–05415, 2011 WL 4345674, at *6
(D.N.J. Sept. 15, 2011)).  On March 3, 2011, IBCS and Plaintiff
entered into a valid Employment Agreement, in which Plaintiff
agreed to perform services as a sales representative for IBCS,
in return for a specified salary, bonus payments, and benefits.
(See Compl. at 12-13; see also Ex. A to Compl.)  Plaintiff's
Complaint, however, alleges that IBCS breached the express terms
of the modified Employment Agreement by terminating his
employment, without remitting the $34,200.00 balance of his
unpaid 2009 bonus, nor relieving him of the $19,029.78 remaining
on his auto lease obligation—both as required by the Employment
Agreement.  (See Compl. at ¶¶ 51-55.)  As a result of IBCS's
failure to perform its obligations under the Employment
Agreement, Plaintiff alleges that he suffered damages in the
amount $53,229.78.  (Compl. at ¶¶ 15-16; see also Golia Aff. At
¶¶ 7-8.)  Following the termination of Plaintiff's employment as
a sales representative, IBCS and Plaintiff entered into a valid
Commission Agreement, in which Plaintiff agreed to act as a

commissions-based independent contractor for IBCS, and IBCS agreed to make commission payments on sales of final bonds, financial guarantees, and contract overruns, in accordance with a specified schedule.  (See Compl. at ¶¶ 21-23; see also Ex. B to Compl.)  Plaintiff's Complaint states that he executed ten qualified transactions and accruing a total commission of $111,089.84, but alleges that IBCS terminated his position as an independent contractor on December 19, 2013, without making all of the required commission payments.  (Compl. at ¶¶ 25-26, 30-31; see also Golia Aff. At ¶¶ 14, 17.)  Rather, as of February 8, 2013, IBCS only made payments totaling $34,274.33.  (See Compl. at ¶ 30.)  Based upon these undisputed allegations, the Court finds that Plaintiff has sufficiently stated claims for breach of the Employment and Commission Agreements.[7]  See Lee v. A to Z Trading LLC, No. 12-4624, 2014 WL 7339195, *2 (D.N.J. Dec. 23, 2014) (finding that the plaintiff "stated a sufficient cause of action for a breach of contract claim").

11.  Finally, with respect to the third inquiry, whether the entry of default judgment would be proper, the Court must consider "(1) whether the party subject to default has a

---

[7] Plaintiff seeks identical relief under theories of conversion, unjust enrichment, and quantum meruit.  (See Compl. at ¶¶ 56-74.) However, because the Court found that Plaintiff sufficiently stated claims for breach of contract, the Court need not reach these parallel claims, which provide no additional entitlement to monetary relief.

meritorious defense, (2) the prejudice suffered by the party
seeking default, and (3) the culpability of the party subject to
default." Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide
Funds, 250 F.R.D. 171, 177 (D.N.J. 2008). Here, IBCS has failed
to proffer any defense to Plaintiff's claims, meritorious or
otherwise, and the Complaint does not clearly suggest the
existence of any meritorious contract defenses, such as mistake,
duress, unconscionability, misrepresentation, or fraud. See
Surdi v. Prudential Ins. Co. of Am., No. 08-225, 2008 WL
4280081, at *2 (D.N.J. Sept. 8, 2008) ("The facts as alleged in
the Complaint provide no indication of a meritorious defense.").
Moreover, because Plaintiff has no other means of seeking
damages for the harm caused by IBCS, the Court finds that
Plaintiff would be prejudiced in the absence of a default
judgment. See Gowan v. Cont'l Airlines, Inc., No. 10-1858, 2012
WL 2838924, at *2 (D.N.J. July 9, 2012) (noting that the
inability to "vindicate rights" absent a default judgment
constitutes prejudice); see also Ramada Worldwide Inc. v.
Courtney Hotels USA, Inc., No. 11-896, 2012 WL 924385, at *5
(D.N.J. Mar. 19, 2012) ("If a default judgment is not entered,
[the plaintiff] will continue to be harmed because it will not
be able to seek damages for its injuries due to defendant's
continuing refusal to participate in this case."). Lastly,
because IBCS failed to defend against this litigation despite

12

having been effectively served with the Complaint, the Court
finds IBCS's delay attributable to culpable conduct.  See Lee,
2014 WL 7339195, at *3 (finding the defendant's failure to
respond despite awareness of the litigation "due to culpable
conduct").  For these reasons, the Court finds default judgment
warranted as to Plaintiff's breach of contract claims against
IBCS.

       12.  Nevertheless, the Court must still assess the amount
of damages sought by Plaintiff.  In considering the amount of
damages, where the plaintiff seeks damages in a sum certain, the
Court may rely upon detailed affidavits, without resorting to a
hearing.  Durant v. Husband, 28 F.3d 12, 15 (3d Cir. 1994);
Amresco Fin. I L.P. v. Storti, No. 99-2613, 2000 WL 284203, at
*2 (E.D. Pa. Mar. 13, 2000) (noting that the entry of a default
judgment with an award of damages is proper when the damage
amount can be ascertained from detailed figures in evidence and
affidavits).  As stated above, Plaintiff seeks $130,045.29 in
damages as a result of IBCS's breaches of the Employment and
Commission Agreements, and has substantiated these damages with
the detailed affidavits of Plaintiff and counsel for Plaintiff,
a voluminous number of invoices that establish Plaintiff's
completion of qualified transactions under the Commission
Agreement, and Plaintiff's statement of IBCS's accounts.  (See
Golia Aff.; Frank Aff.; Exs. C & D to Compl.)  As a result, the

Court finds Plaintiff entitled to judgment in the amount of
$130,045.29, or $53,229.78 in connection with the Employment
Agreement and $111,089.84 in connection with the Commission
Agreement, less IBCS's $34,274.33 in payments to Plaintiff in
the 2013 calendar year.  (See generally Golia Aff.)

13.  Plaintiff, however, also seeks an award of exemplary
damages, attorney's fees, and costs, each of which the Court
shall address in turn.  First, Plaintiff seeks to have the
judgment amount augmented by an award of exemplary damages under
the Commission Payment Statute in an amount equivalent to three
times the allegedly outstanding commission amount of
$111,089.84.  (See Pl.'s Br. at 16-17, 20.)  The Commission
Payment Statute provides that a principal who fails to make
required commission payments "shall be liable to the sales
representative for all amounts due the sales representative,
exemplary damages in an amount of three times the amount of
commissions owed to the sales representative and all attorney's
fees actually and reasonably incurred by the sales
representative in the action and court costs."  N.J.S.A. §
2A:61A-3a.  Here, however, Plaintiff has not demonstrated that
he qualifies as a covered commissioned sales representative
under the statute, particularly because he transacted in
financial instruments, an area potentially exempt from the
Commission Payment Statute's provisions.  See N.J.S.A. § 2A:61A-

14

8c (noting that the statute does not apply to "any person registered or regulated" by the New Jersey Bureau of Securities pursuant to the "Uniform Securities Law (1997)," the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq., the Investment Company Act of 1940, 15 U.S.C. §§ 80a-1, et seq., or the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1, et seq.). Moreover, Plaintiff seeks "exemplary damages" in the amount of three times his $111,089.84 total commissions, but acknowledges that, from February 8, 2013 to October 17, 2013, IBCS remitted payments to Plaintiff in the total amount of $34,274.33.  (See Ex. D to Compl; see also Pl.'s Br. at 9.)  However, given the variety of outstanding sums, it is unclear whether these payments should solely be counted against Plaintiff's outstanding commission payments (in which case Plaintiff's potential claim for treble damages would be commensurately reduced), or whether IBCS's payments must be counted against all outstanding sums in connection with Plaintiff's 2009 bonus, automobile lease, and commissions (in which case Plaintiff's potential claim for treble damages would again be commensurately reduced).  In any event, the present record does not sufficiently demonstrate Plaintiff's entitlement to treble damages in the amount of $333,269.52, or, stated in other terms, three times Plaintiff's total commission for 2013, $111,089.84. Indeed, the Court cannot at this time determine how to

15

appropriate IBCS's payments, nor can the Court ascertain the amount of commissions potentially subject to the treble provisions of the Commissions Payment Statute. For all of these reasons, Plaintiff's request for treble damages will be denied without prejudice.

14. Second, counsel for Plaintiff requests that the judgment be augmented in the amount of his contingency-based attorney's fees. (See Pl.'s Br. at 20; see also Frank Aff.) Specifically, although Plaintiff acknowledges that the Commission Payment Statute only permits an award of "actually and reasonably incurred" attorney's fees (see Pl.'s Br. at 20), counsel for Plaintiff seeks to recover a contingent fee in the amount of $154,421.99, or 33.33% of Plaintiff's calculated recovery in this action (inclusive of unpaid commissions, exemplary damages, and unpaid wages and benefits). (Frank Aff. At ¶ 11.) Counsel for Plaintiff's request, however, far exceeds that provided under the Commission Payment Statute, and counsel has provided no authority for his position that contingent fees qualify as "actually and reasonably incurred" attorney's fees under the Commission Payment Statute. (See generally Pl.'s Br. at 16.) Nor has counsel for Plaintiff otherwise provided documentation demonstrating the attorney's fees he actually incurred in obtaining a default judgment in favor of Plaintiff. See Kas Oriental Rugs, Inc. v. Ellman, 926 A.2d 387, 394 (N.J.

Super. Ct. App. Div. 2007) (noting that the phrase "'actually and reasonably incurred'" requires a finding of fees actually incurred, and determination of whether that incurred fee represents "a reasonable expenditure of time and effort" given the litigation's outcome).  For all of these reasons, Plaintiff's request for attorney's fees will also be denied without prejudice.

15.  Finally, Plaintiff seeks to recover the $400 filing fee for this action, and $210 in costs incurred in connection with the service of the Complaint.  (See Ex. D to Frank Aff.) In support of this request, Plaintiff has, in accordance with Local Civil Rule 54.1, produced a detailed invoice, together with the affidavit of counsel.  (See Frank Aff.; see also Ex. D to Frank Aff.)  The Court finds Plaintiff's request for $610 in costs reasonable and recoverable under Federal Rule of Civil Procedure 54 and 28 U.S.C. § 1920, and will include this amount in the Default Judgment.

16.  For the reasons stated above, the Court will enter judgment against IBCS and in favor of Plaintiff in the amount of $130,655.29, comprised of $130,045.29 in damages for IBCS's breaches of the Employment and Commission Agreements and $610 in costs.  The amount of this default judgment in a sum certain will be entered without prejudice to Plaintiff's right to have the judgment amended to potentially include an award of

17

attorney's fees, treble damages, and/or the entry of judgment against Fidelity.  Any supplemental submission seeking to amend the default judgment must, however, be received within fourteen (14) days, and must demonstrate, with specificity, the basis to exercise jurisdiction over Fidelity, the basis for, and calculation of, any renewed request for treble damages, and/or must be accompanied by an affidavit of attorney's fees submitted in the format required by Local Civil Rule 54.2.  An amended default judgment will be entered if these submissions are timely made and approved by the Court.

17.  An accompanying Order will be entered.


   **April 27, 2015**                         **s/ Jerome B. Simandle**

Date                                     JEROME B. SIMANDLE

                                            Chief U.S. District Judge